UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

MARC TRAUTMAN
on behalf of himself and all
others similarly situated,

        Plaintiff,                                 Case No. 20-cv-43

        v.

MIDWEST COMPOSITE TECHNOLOGIES, LLC

        Defendant

## BRIEF IN SUPPORT OF JOINT MOTION
## FOR PRELIMINARY SETTLEMENT APPROVAL

Plaintiff, Marc Trautman, on behalf of himself and all others similarly situated, and Defendant, Midwest Composite Technologies, LLC, submit this Brief in Support of their Joint Motion for Preliminary Settlement Approval.

## **<u>INTRODUCTION</u>**

The parties' Settlement Agreement, titled "Settlement Agreement & Release," attached as Exhibit A to the parties' Joint Motion for Preliminary Settlement Approval, (ECF No. 17-1), is fair, reasonable, and adequate because it fully satisfies this Court's criteria for class and collective action settlements.

As such, the parties respectfully request that this Court grant the parties' Joint Motion for Preliminary Settlement Approval and issue an order effectuating the same. :

## SETTLEMENT BACKGROUND

On January 11, 2021, Plaintiff filed his Complaint in this matter against Defendant, (ECF No. 1), alleging claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), and under Wisconsin's Wage Payment and Collection Laws, Wis. Stat. § 109.01 et seq., Wis. Stat. § 104.01 et seq., Wis. Stat. § 103.001 et seq., Wis. Admin. Code § DWD 274.01 et seq., and Wis. Admin. Code § DWD 272.001 et seq. ("WWPCL").

On March 25, 2021, Plaintiff filed an Amended Complaint, (ECF No. 7), asserting claims on behalf of himself and similarly situated current and former employees that Defendant violated the FLSA and the WWPCL by allegedly: (1) shaving time (via electronic timeclock rounding) from Plaintiff's and all other hourly-paid, nonexempt employees' weekly timesheets for pre-shift, post-shift, and in-shift hours worked and/or work performed, to the detriment of said employees and to the benefit of Defendant, in violation of the FLSA and WWPCL; (2) failing to compensate Plaintiff and all other hourly-paid, nonexempt employees for meal periods during which they were not completely relieved of duty or free from work for at least thirty (30) consecutive minutes in duration, in violation of the WWPCL, which resulted in overtime violations of the FLSA; and (3) failing to include all forms of non-discretionary compensation, such as monetary bonuses, incentives, awards, and/or other rewards and payments, in all current and former hourly-paid, non-exempt employees' regular rates of pay for overtime calculation purposes, in violation of the FLSA and WWPCL. (ECF No. 7, ¶ 3; Declaration of Scott S. Luzi ("Luzi Decl."), ¶ 9.)

In approximately mid-February 2021, counsel for the parties began directly discussing settlement. (Luzi Decl., ¶ 10.) Since the inception of this case, Defendant has denied, and continues to deny, engaging in any wage and hour violations, including but not limited to those

allegations contained in Plaintiff's Amended Complaint, ECF No. 7. (*Id*.) Between approximately February 2021 and June 2021, counsel for the parties debated and analyzed their respective legal arguments and factual positions, and they concluded that the prospect of resolution outweighed the continued time, effort, expense, and risk of litigation for both parties, including extensive written discovery, depositions, document review and production, and the filing of conditional certification, certification, decertification, and dispositive motions. (*Id*.)

During this time, from approximately February 2021 to June 2021, counsel for the parties communicated directly and engaged in substantive arms-length settlement negotiations with each other regarding legal authority relevant to Plaintiff's causes of action and Defendant's defenses. (Luzi Decl., ¶ 11.) Defendant produced relevant documentation, including Plaintiff's payroll records, Plaintiff's time records, and class-related information, such as payroll and timekeeping data for hourly-paid, non-exempt employees employed at Defendant between January 2018 and January 2021. (*Id*.) Counsel for the parties created and exchanged detailed damages models and monetary settlement calculations, and discussed other monetary and non-monetary terms and conditions of settlement, as well as the timelines, processes, and procedures of settlement. (*Id*.)

After the parties preliminarily agreed on settlement terms and conditions, counsel for the parties drafted and finalized the settlement agreement. (Luzi Decl., ¶ 12.) Ultimately, counsel for the parties believe the terms and conditions embodied in the Settlement Agreement are fair, reasonable, and adequate given all the considerations above. (*Id*.)

# THE SETTLEMENT AGREEMENT

In June 2021 and July 2021, counsel for the parties drafted and finalized their settlement agreement – the ultimate result of which is attached to the parties' Joint Motion for Preliminary Settlement Approval as Exhibit A. (ECF No. 17-1.)

The primary terms and conditions of the Settlement Agreement are summarized below.

## A.    The FLSA Collective

For settlement purposes, the FLSA collective is defined as: All individuals who worked as hourly-paid, non-exempt employees at Defendant between January 11, 2018 and January 11, 2021 as identified in **Exhibit B** to this Agreement and who file a Consent to Join Form within forty-five (45) days following service of the Notice Packet. (EF No. 17-1, p. 1, ¶ F.) "Collective Members" are those individuals "who file a Consent to Join Form within forty-five (45) days following service of the Notice Packet." (*Id.* at ¶ 1.2.)

## B.    The Rule 23 Class

For settlement purposes, the Rule 23 WWPCL class is defined as: All individuals who worked as hourly-paid, non-exempt employees at Defendant between January 11, 2019 and January 11, 2021 as identified in Exhibit B to this Agreement and who do not affirmatively opt-out of the Settlement within forty-five (45) calendar days following service of the Notice Packet." (ECF No. 17-1, p. 2, ¶ G.) "Class Members" are those individuals "who do not affirmatively opt-out of the Settlement within forty-five (45) calendar days following service of the Notice Packet." (*Id.* at ¶ 1.1 (footnote omitted).)

## C. Summary of Settlement Agreement's Terms

### *Payments to Class and Collective Members*

As settlement of this matter, Defendant has agreed to pay an amount not to exceed $115,000.00. (ECF No. 17-1, ¶ 1.10 & 3.1(A).) After deducting Court-approved attorneys' fees and costs to Plaintiff's counsel and a Court-approved Service Award to Plaintiff, the parties anticipate that the Net Settlement Fund will total approximately $69,908.00: a Class Fund of $34,804.00; and a Collective Fund of $34,804.00. (*Id.* at ¶ 3.1(C) & Exhibit B; Luzi Decl. ¶ 12.)

The parties anticipate that there are a total of 85 potential Class and Collective members. (ECF No. 17-1, ¶ 3.1(C) & Exhibit B.) A total Net Settlement Fund of approximately $69,908.00 represents a significant monetary recovery for Class and Collective members in allegedly unpaid overtime wages (including liquidated damages) during the time period between January 2019 and January 2021. (*Id.* at ¶ 3.1(C).) Class members who do not exclude themselves, as set forth in the Settlement Agreement, will be paid their allocated share as stated in Exhibit B to the Settlement Agreement. (*Id.* at ¶ 3.1(C)1 & Exhibit B; Luzi Decl. ¶ 13.) Likewise, Collective members who opt-in to the settlement, as set forth in the Settlement Agreement, will be paid their allocated share of reasonably approximated liquidated damages owed during the time period between September 15, 2018 and September 15, 2020. (*Id.* at ¶ 3.1(C)2 & Exhibit B; Luzi Decl. ¶ 13.)

### *Notice to Settlement Putative Collective and Class Members*

Within five (5) business days after the Court's Preliminary Approval Order, Defendant's Counsel will provide Plaintiff's Counsel with the names and last known addresses of the Putative Collective Members and Putative Class Members, (ECF No. 17-1, ¶ 2.2(B)1.) Within fifteen (15) days of the Court's entry of the Preliminary Approval Order, Plaintiff's Counsel will mail the

Notice Packet to the Collective Members and Putative Class Members via U.S. First-Class mail. (*Id.* at ¶ 2.2(B)2.) If any Notice Packets are returned by the postal service as undeliverable, Plaintiff's Counsel will make best efforts in locating the individual. (*Id.* at ¶ 2.2(B)3.)

### *Service Award to Named Plaintiff*

For services rendered to the Putative Collective Members and Putative Class Members as part of this case, Defendant has agreed to pay Named Plaintiff a Service Award in the amount of $5,000.00 from the Gross Settlement Amount. (ECF No. 17-1, ¶ 3.3.) Plaintiff's Counsel will file a motion requesting that the Court approve the Service Award, which Defendant does not oppose. (*Id.*)

### *Attorneys' Fees and Costs*

From the Gross Settlement Amount, Defendant has agreed to pay Plaintiff's counsel attorneys' fees and costs in the total amount of $40,092.00. (ECF No. 17-1, ¶ 3.2.) Plaintiff's Counsel will file a Motion for Approval of Attorneys' Fees and Costs, which Defendant does not oppose. (*Id.*)

### *Release of Claims*

Release By Collective Members: Upon the Court entering a Final Order Approving Settlement, and in exchange for the monetary consideration recited in this Agreement, Named Plaintiff hereby agrees to dismiss the FLSA Claims with prejudice, and each Collective Member, including Named Plaintiff, will release the Releasees from: any and all wage and hour claims that accrued while employed at Defendant as an hourly paid, non-exempt employee, relating back to the full extent of the applicable statute of limitations and continuing through the date of the Order Granting Approval of Settlement, including, all state and federal claims for unpaid overtime wages, and related claims for penalties, interest, liquidated damages, attorneys' fees,

costs, and expenses, and any other claims derived from the alleged failure to pay such wages when due pursuant to Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201, *et. seq.* (ECF 17-1, ¶ 4.1.)

Release By Class Members: Upon the Court entering a Final Order Approving Settlement, and in exchange for the monetary consideration recited in this Agreement, Named Plaintiff hereby agrees to dismiss the WWPCL Claims with prejudice, and each Class Member, including Named Plaintiff, will release the Releasees from: any and all wage and hour claims that accrued while employed at Defendant as an hourly paid, non-exempt employee, relating back to the full extent of the applicable statute of limitations and continuing through the date of the Order Granting Approval of Settlement, including, all state claims for unpaid overtime wages, and related claims for penalties, interest, liquidated damages, attorneys' fees, costs, and expenses, and any other claims derived from the alleged failure to pay such wages when due pursuant to Wisconsin's Wage Payment and Collection Laws ("WWPCL"), Wis. Stat. § 109.01 *et seq.*, Wis. Stat. § 104.01 *et seq.*, Wis. Stat. § 103.001 *et seq.*, Wis. Admin. Code § DWD 274.01 *et seq.*, and Wis. Admin. Code § DWD 272.001 *et seq.* (ECF 17-1, ¶ 4.2.)

Release By Named Plaintiff: Upon the Court entering a Final Order Approving Settlement, and in exchange for the Service Award recited in this Agreement, Named Plaintiff and his respective predecessors, successors, heirs and assigns, in addition to his legal representatives, hereby and forever completely releases and discharges Releasees from any and all known or unknown claims, which are releasable by law, of any kind which arise out of or are in any manner based upon or related to the employment relationship between him and Defendant and relating back to the full extent of the applicable statute of limitations and continuing through the date of the Order Granting Approval of Settlement. Named Plaintiff's release of claims

against Releasees, includes but is not limited to: (1) claims pursuant to the FLSA; (2) claims pursuant to the WWPCL; (3) any state common law wage claims, including, but not limited to, breach of contract (whether express or implied), promissory estoppel, unjust enrichment and quantum merit; (4) Title VII of the Civil Rights Act of 1964, as amended; (5) Section 1981 of the Civil Rights Act of 1866 (42 U.S.C. § 1981); (6) the Genetic Information Nondiscrimination Act; (7) the Americans with Disabilities Act, as amended; (8) the Equal Pay Act; (9) the National Labor Relations Act; (10) the Employee Retirement Income Security Act of 1974; (11) the Wisconsin Fair Employment Act; (12) the Wisconsin Business Closing law; (13) state or federal parental, family and medical leave acts; (14) the Uniformed Services Employment and Reemployment Rights Act (USERRA), or any other local, state, or federal military and/or veterans rights act, or any other claim based on veteran status; (15) claims arising under any other local, state or federal statute, ordinance, regulation or order, or which involve a claim or action for wrongful discharge, defamation, misrepresentation, violation of public policy, invasion of privacy, emotional distress, breach of contract (express or implied) and/or any other tort or common law cause of action; and (16) any other federal, state or local law, statute or ordinance affecting the Named Plaintiff's employment with or termination from Defendant. (ECF 17-1, ¶ 4.3.)

## **ARGUMENT**

### I.    **PRELIMINARY APPROVAL OF THE SETTLEMENT AGREEMENT IS APPROPRIATE**

Resolution of class action litigation by settlement is favored. *Isby v. Bayh*, 75 F.3d 1191, 1996 (7th Cir. 1996). The standards for approval of the settlement of FLSA collective actions "track the considerations that the court must weigh for reviewing proposed class action settlements under Rule 23." *Smoot v. Wieser Bros. Gen. Contractors, Inc.*, 2016 WL 1736498, at

*6 (W.D. Wis. Apr. 29, 2016).

Under the FLSA, employees can bargain, waive, or modify their rights if the court approves of the parties' settlement as a fair and reasonable resolution of a bona fide dispute over alleged violations of the FLSA, and the Court then enters the settlement as a stipulated judgment. *Lynn's Food Store, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982). An FLSA settlement requires court approval to be valid and enforceable. *Walton v. United Consumers Club, Inc*., 786 F.2d 303, 306 (7th Cir. 1986).

For the WWPCL claims, a class action settlement may be approved under Fed. R. Civ. P. 23 if: (1) the individual class members are afforded an opportunity to request exclusion from the settlement; (2) a hearing has been conducted; and (3) the court finds that the settlement is fair, reasonable, and adequate. Fed. R. Civ. P. 23(e). In making this determination, courts "must weigh the probabilities of victory or defeat as indicated by the legal or factual situation presented and determine whether the compromise, taken as a whole, is in the best interests" of the class members. *United Founders Life Ins. Co. v. Consumers Nat'l Life Ins. Co.*, 447 F.2d 647, 655 (7th Cir. 1971) (internal quotations omitted).

The Seventh Circuit considers the following factors when determining whether a proposed class action settlement is fair, adequate, and reasonable: (a) the strength of the plaintiff's case, weighed against the settlement offer; (b) the complexity, length, and expense of further litigation; (c) the presence or absence of collusion between the parties; (d) the opinion of competent counsel; (e) the reaction of class members to the proposal; and (f) the stage of proceedings and discovery completed. *Armstrong v. Bd. of Sch. Dirs. of the City of Milwaukee*, 616 F.2d 305, 314 (7th Cir. 1980), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873, 875 (7th Cir. 1998), *aff'd sub nom. California Pub. Employees' Ret. Sys. v. Felzen*, 525 U.S.

315 (1999)).

Ultimately, at the preliminary approval stage, the Court's task is to determine whether the proposed settlement is "within the range of possible approval" so as to warrant sending notice to class members and proceed with a fairness hearing. *Gautreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982).

Here, the parties' Settlement Agreement satisfies all of the requirements and factors articulated above and is therefore appropriate for preliminary approval.

### A. The Strength of the Case Vis-à-Vis the Settlement Amount

The first settlement-approval factor is "the strength of plaintiffs' case on the merits balanced against the amount offered in the settlement." *Synfuel Techs., Inc. v. DHL Express (USA), Inc.* 463 F.3d 646, 653 (7th Cir. 2006). In this case, the parties have thoroughly investigated and analyzed Plaintiff's claims against Defendant under the FLSA and WWPCL, and while the parties nonetheless maintained a strong belief in their respective legal and factual positions and on the possibility of class and collective certification (and/or de-certification), they recognized that the prospect of expeditious resolution outweighed the continued time, effort, expense, and risk of litigation for both parties, including depositions and extensive document review and production. The time and expense associated with discovery, briefing, and hearings on collective and class certification alone would have been substantial, further supporting the parties' decision to enter into settlement negotiations, resulting in the parties' Settlement Agreement. (Luzi Decl., ¶ 12.)

In order to fully and finally resolve this matter, Defendant has agreed to monetary compensation for Plaintiff and the Settlement Class members that fairly and adequately represents the alleged overtime wages actually owed to them, including liquidated damages. Specifically, the parties anticipate that a total of 85 Putative Class Members and Putative

Collective Members will theoretically participate in the Net Settlement Fund, totaling approximately $69,908.00. (*Id.* at ¶ 3.1(C) & Exhibit B; Luzi Decl. ¶ 13.) Each Putative Class Member who does not affirmatively opt-out of the parties' settlement – and each Collective Member who opts-in to the settlement – as set forth in the Settlement Agreement, will be paid their allocated share of reasonably approximated and alleged wages owed (including liquidated damages) during the time period between January 2019 and January 2021. (*Id.* at ¶ 3.1(C)2 & Exhibit B; Luzi Decl. ¶ 13.)

Thus, the overall balance supports approval of the Settlement Agreement.

**B.      The Complexity, Length, and Expense of Litigation**

The complexity, expense, and length of continued litigation weigh in favor of approving this Settlement Agreement. As mentioned above, both parties acknowledge the continued time, effort, expense, and risk of litigation, including extensive document review and production and depositions. Litigation of this matter through conditional certification, final certification and/or de-certification, dispositive motions, and ultimately trial would have required considerable time, effort, and expense for both sides. (Luzi Decl., ¶ 12.) With this in mind, from all parties' perspective, settlement is favored.

**C.      The Absence of Fraud or Collusion in the Settlement**

This case involves a bona fide dispute over whether Defendant violated the FLSA and WWPCL as alleged by Plaintiff. The ultimate resolution, embodied in the Settlement Agreement, was the result of months of arms-length negotiations between counsel for the parties between February 2021 and June 2021. (Luzi Decl., ¶¶ 10-12.) Given these considerations, it is clear that there was no fraud or collusion. The settlement will provide Plaintiff and the Settlement Class members with a fair recovery while eliminating the risks and costs both sides would bear if this litigation continued to a resolution on the merits.

**D.    The Lack of Opposition to the Settlement**

The parties are unaware of any opposition to the settlement at this time. (Luzi Decl., ¶ 16.)

**E.    Counsel's Opinion**

Counsel for the parties support the settlement. (Luzi Decl., ¶ 12.) As experienced practitioners in the area of wage and hour class and collective actions, the counsel for the parties recognized the uncertainty of proceeding through dispositive motions and trial, and they have sought a fair and equitable compromise to resolve this matter. Despite their divergent views regarding Plaintiff's allegations, counsel for the parties engaged in arms-length negotiations from February 2021 to June 2021 and ultimately reached a settlement embodied in the Agreement that they consider to be fair, reasonable, and adequate given all the considerations above. (*Id.* at ¶¶ 11-12.)

**F.    The Amount of Discovery and Stage of Proceedings**

Between February 2021 and June 2021, counsel for the parties communicated, corresponded, and engaged in a thorough and substantive exchange of information relevant to Plaintiff's cause(s) of action and Defendant's defenses. (Luzi Decl., ¶¶ 10-12.) For example, counsel for the parties exchanged relevant documentation, including Plaintiff's payroll records, Plaintiff's time records, and the payroll and timekeeping records for hourly-paid, non-exempt employees employed at Defendant between January 2019 and January 2021. (*Id.*) Counsel for the parties created and exchanged detailed damages models and monetary settlement calculations, and discussed other monetary and non-monetary terms and conditions of settlement, as well as the timelines, processes, and procedures of settlement. (*Id.*) After the parties preliminarily agreed on settlement terms and conditions, counsel for the parties worked together to draft and finalize the settlement agreement. (*Id.*)

Over the course of the case, the parties have had ample time and information to evaluate the risks of continued litigation vis-à-vis settlement. (Luzi Decl., ¶¶ 10-12.) Additional discovery proceedings would not help to materially crystallize the parties' positions any further, and after exchanging monetary offers and preliminarily agreeing on settlement terms and conditions, counsel for the parties worked directly to draft and finalize the settlement agreement. (*Id*.) Ultimately, counsel for the parties believe the terms and conditions embodied in the Settlement Agreement are fair, reasonable, and adequate given all the considerations above. (*Id*.)

## II. FOR PURPOSES OF SETTLEMENT ONLY, THE PROPOSED CLASS SHOULD BE CERTIFIED

Rule 23(a) requires that, in order for a class to be certified, the following elements must be met: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. In this case, all four elements of Rule 23(a) are met.

Additionally, Plaintiff must satisfy one of the elements of Rule 23(b). Under Rule 23(b)(3), certification of the class is proper where questions of law or fact common to the entire class predominate over individual claims and a class action is superior to other methods for fair and efficient adjudication. In this case, the elements of Rule 23(b)(3) are met.

### A. The Numerosity Requirement of Rule 23(a)(1)

The numerosity requirement of Rule 23(a)(1) requires a showing that the number of members in the proposed class is so large as to make joinder impracticable. *Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 663-4 (7th Cir. 2004). While there is no explicit cut-off for numerosity, the Seventh Circuit has found classes of forty (40) individuals sufficient. *See, e.g.,*

*Swanson v. Am. Consumer Indus., Inc.*, 415 F.2d 1326, 1333 n.9 (7th Cir. 1969).

This case meets the numerosity requirement of Rule 23(a)(1) because there are approximately 85 Putative Class and Collective Members. (ECF No. 17-1, ¶ 3.1.)

### B.     The Commonality Requirement of Rule 23(a)(2)

Rule 23(a)(2) requires that class members share a common question of law or fact. This element is satisfied when a common issue of law or fact is "capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Common questions often arise where defendants have engaged in standardized conduct towards members of the proposed class. *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998); *see also Suchanek v. Sturm Foods*, 764 F.3d 750, 756 (7th Cir. 2014) ("Where the same conduct or practice by the same defendant gives rise to the same kind of claims from all class members, there is a common question.")); *Williams-Green v. J. Alexander's Rests., Inc*., 277 F.R.D. 374 (N.D. Ill. 2011) ("[Plaintiff] has demonstrated that her claims…arise from a common nucleus of fact based upon standardized conduct and, therefore, has satisfied the commonality requirement of Rule 23(a)(2).").

This case meets the requirement of Rule 23(a)(2) because Plaintiff and the Class members and Collective members have identical wage-and-hour claims arising under the same statutes—the FLSA and WWPCL—based upon similar allegedly unlawful pay practices applicable to the Class as a whole. (ECF No. 7, ¶ 3.)

### C.     The Typicality Requirement of Rule 23(a)(3)

The typicality requirement of Rule 23(a)(3) is closely related to the question of commonality. *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992). The Seventh Circuit has held that "[a] plaintiff's claim is typical if it arises from the same event or practice or course of

conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *Keele*, 149 F.3d at 595 (citations and internal quotation marks omitted); *see also De La Fuente v. Stokley-Van Camp, Inc*., 713 F.2d 225, 232 (7th Cir. 1983). Stated another way, the class representative's claims must have "the same essential characteristics" as the class members' claims. *Muro v. Target Corp.*, 580 F.3d 485, 492 (7th Cir. 2009). Further, typicality element of Rule 23(a)(3) focuses on the defendant's actions leading to the alleged violation and not on possible particularized defenses against certain individual class members. *Wagner v. NutraSweet Co.*, 95 F.3d 527, 534 (7th Cir. 1996).

In this case, Plaintiff is a member of the Putative Class and Putative Collective that he seeks to represent, and the legal theories advanced by Plaintiff, (*see* ECF No. 7, ¶ 3), apply equally to him and the Putative Class and Collective Members. Because Plaintiff's claims involve the same legal theories and arise from the same alleged course of conduct that gives rise to the claims of the Settlement Class members, the Rule 23(a)(3) typicality element has been satisfied.

### D.     The Adequacy of Representation Requirement of Rule 23(a)(4)

The adequacy of representation element under Rule 23(a)(4) consists of two parts: (1) a plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation; and (2) a plaintiff must not have interests antagonistic to those of the class. *Eubank v. Pella Corp.*, 753 F.3d 718, 722 (7th Cir. 2014); *Phillips v. Asset Acceptance, LLC*, 736 F.3d 1076, 1080-81 (7th Cir. 2013).

In this case, both considerations are met because Plaintiff and Plaintiff's counsel will provide fair and adequate protection for the interests of the Class and Collective as required by Rule 23(a)(4). Plaintiff understands the obligations of a class representative, and Plaintiff's counsel is experienced with complex federal wage and hour litigation by virtue of successfully

representing numerous individuals in single-Plaintiff and multi-Plaintiff wage and hour actions. (Luzi Decl., ¶¶ 2-7.) Plaintiff also has no interests antagonistic to those of the Class and Collective. Plaintiff seeks, on behalf of himself and the Putative Class and Collective Members, monetary damages pursuant to the FLSA and WWPCL as a result of Defendant's alleged unlawful pay practices. Given the identity of claims, there is neither the potential for conflicting interests nor any antagonism between the interests of Plaintiff and the Putative Class and Collective Members.

### E. The Predominance Requirement of Rule 23(b)(3)

Under Rule 23(b)(3), certification of the class is proper where questions of law or fact common to class members predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. *See Chicago Teachers Union, Local No. 1 v. Bd. of Educ. Of Chi.*, 797 F.3d 426, 444 (7th Cir. 2015) ("Common issues of fact and law predominate in particular when adjudication of questions of liability common to the class will achieve economies of time and expense."). To make this determination, the Court must consider the class members' interests in individually controlling the prosecution or defense of separate actions, the extent and nature of any litigation concerning the controversy already begun by or against class members, the desirability or undesirability of concentrating the litigation of the claims in the particular forum, and the likely difficulties in managing a class action. Rule 23(b)(3)(A)-(D).

The Seventh Circuit has summarized this standard by stating that, "class action treatment is appropriate and permitted by Rule 23 when judicial economy from the consolidation of separate claims outweighs any concern with possible inaccuracies from their being lumped together in a single proceeding for a decision by a single judge or jury." *Mejdrech v. Met-Coil Sys. Corp.*, 319 F.3d 910, 911 (7th Cir. 2003). Put differently, is the putative class sufficiently

cohesive to warrant adjudication by representation? *See, e.g., Blihovde*, 219 F.R.D. at 620 (*citing Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997)).

In this case, and while the Putative Class and Collective Members may have a theoretical interest in controlling their own legal claims, they also have an interest in resolving their claims efficiently. The proposed Settlement Agreement provides that efficiency. Indeed, the Seventh Circuit has held that a class action is an efficient and effective way to obtain relief for individual class members. *See Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997).

Further, when challenging a uniform policy, as Plaintiff challenges Defendant's uniform compensation policies and practices in this case, the validity of those policies predominate over individual issues and class certification is appropriate. *Id.* (citing *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 147 n. 20 (1982)). Individual inquiries into the application of that policy to an individual within the class will not supplant predominance. *Id.*

The Settlement Agreement resolves the parties' dispute(s) regarding Defendant's allegedly unlawful compensation policies and practices regarding compensating Putative Class and Collective Members for all work performed each workday and each workweek at an overtime rate of pay. Because Plaintiff has alleged that these compensation policies and practices were uniformly applied to all Putative Class and Collective Members in the State of Wisconsin, and because the parties' Settlement Agreement resolves their disputes over these practices, common issues predominate in this matter, and this element under Rule 23(b)(3) is met.

### F. The Superiority Requirement of Rule 23(b)(3)

The superiority requirement under Rule 23(b)(3) requires Courts to consider: (1) the interests of the class members in controlling the prosecution of their own claims; (2) the existence of other pending litigation related to the same controversy; (3) the desirability of

concentrating the claims in one forum; and (4) the difficulty of managing the class.

In this case, there is no other related litigation pending, (Luzi Decl., ¶ 16), consolidating all the claims before this Court is efficient and desirable, and there will be no difficulties in managing this class action in light of the parties' settlement. *See Amchem Prods.*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial.").

Finally, a class is the superior method for resolving this case because there is no prejudice to any Putative Class and Collective Member: any member who prefers to litigate his or her legal claim(s) separately may opt out of the Class (or not opt in to the Collective) during the Notice period. Class resolution is desirable in this case given the size of the Class and Collective and the nature of the alleged violations. Defendant's challenged compensation policies allegedly harmed each Putative Class and Collective Member, but said members' individual interests in prosecuting these claims is limited by the relatively small monetary value of each individual claim, which also makes adjudication of individual claims inefficient and unlikely. Even so, to the extent that any Putative Class and Collective Member prefers to litigate his or her legal claim(s) separately, the Class notice mechanism provides him or her the opportunity to do so.

## III.    FOR PURPOSES OF SETTLEMENT ONLY, THE PROPOSED COLLECTIVE SHOULD BE CERTIFIED

Courts have held that, where a Plaintiff satisfies Rule 23 standards for class certification, that Plaintiff also satisfies the standards for certification of a FLSA collective action. *See Espenscheid v. DirectSat USA, LLC*, 705 F.3d 770, 772 (7th Cir. 2013) ("[D]espite the difference between a collective action and a class action and the absence from the collective-action section of the Fair Labor Standards Act of the kind of detailed procedural provisions found in Rule 23,

there isn't a good reason to have different standards for the certification of the two different types of action, and the case law has largely merged the standards, though with some terminological differences.") (citing *Alvarez v. City of Chicago*, 605 F.3d 445, 449 (7th Cir. 2010)).

Accordingly, for settlement purposes only, the parties request that this Court certify an FLSA collective on behalf of the Settlement Class.

## IV. THE PARTIES' NOTICE PLAN

Within five (5) business days after the Court's Preliminary Approval Order, Defendant's Counsel will provide Plaintiff's Counsel with the names and last known addresses of the Putative Collective Members and Putative Class Members, (ECF No. 17-1, ¶ 2.2(B)1.) Within fifteen (15) days of the Court's entry of the Preliminary Approval Order, Plaintiff's Counsel will mail the Notice Packet to the Collective Members and Putative Class Members via U.S. First-Class mail. (*Id.* at ¶ 2.2(B)2.) If any Notice Packets are returned by the postal service as undeliverable, Plaintiff's Counsel will make best efforts in locating the individual. (*Id.* at ¶ 2.2(B)3.)

## V. THE PARTIES' PROPOSED NOTICE PACKET AND MANNER OF DELIVERY ARE APPROPRIATE

In order to protect the rights of absent members of a Rule 23 class, the Court must provide the best notice practicable of the settlement to all class members. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 174-75 (1974). The Seventh Circuit has found that notice satisfies Rule 23 due process, and binds all members of the class, if it: (1) describes the essential terms of the settlement; (2) discloses any special benefits or incentives to the class representatives; (3) provides information regarding attorneys' fees; (4) indicates the time and place of the hearing to consider approval of the settlement and the method for objecting to and/or opting out of the settlement; (5) explains the procedures for allocating and distributing settlement funds; and

(6) prominently displays the address of class counsel and the procedure for making inquiries. *See, e.g., Airline Stewards and Stewardesses Ass'n 550 v. Am. Airlines*, 455 F.2d 101, 108 (7th Cir. 1972) (holding that due process was satisfied by notice that explained the status of proceedings, significance of judicial approval of settlement, and opportunity to object at the hearing)). Likewise, "notice of FLSA claims must give potential class members enough information to make informed decisions about whether to participate." *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989)).

Here, the parties' notice plan provides for Plaintiff's counsel to distribute the Notice Packet via first-class U.S. Mail, which is attached to the Settlement Agreement as Exhibit A, to all Putative Class and Collective Members. The contents of the Notice Packet meet all of the six criteria set forth above, clearly identifying the options available to Putative Class and Collective Members and comprehensively explaining the nature and mechanics of the settlement.

The proposed manner of delivery of the Notice Packet is also sufficient. The Notice will be sent via first-class U.S. Mail to all Putative Class and Collective Members. If any Notice Packet is returned to Plaintiff's Counsel as undeliverable, Plaintiff's Counsel will take other appropriate steps to identify and mail the Notice to an alternative address for the Putative Class and Collective Member. (ECF No. 17-1, ¶ 2.2(B)(3).) *See, e.g., Burns v. Elrod,* 757 F.2d 151, 154 (7th Cir. 1985); *Eisen*, 417 U.S. at 177 ("It is beyond dispute that notice by first class mail ordinarily satisfies Rule 23(c)(2)'s requirement that class members receive the 'best notice practicable under the circumstances.'").

Accordingly, the parties' Notice Packet, which is attached to the Settlement Agreement as Exhibit A, as well as the manner of delivery to all Putative Class and Collective Members, complies with Rule 23 and due process, and the Notice Packet should be approved by this Court.

## VI. PLAINTIFF'S SERVICE AWARD

The Seventh Circuit has recognized that, in appropriate cases, class representatives may be entitled to incentive awards. *See Spicer v. Chi. Bd. Options Exch.*, 844 F. Supp. 1226, 1267 (N.D. Ill. 1993) (citing *In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 571 (7th Cir. 1992)). The amount of the award can reflect the extent to which the class has benefitted from the plaintiff's efforts to protect the interests of the class and the amount of time and effort expended. *See Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998).

In this case and prior to the Fairness Hearing, Plaintiff will file a motion asking the Court to approve a Service Award of $5,000.00 for the services he rendered to the Putative Class and Collective Members as part of this case. (ECF No. 17-1, ¶ 3.3.) Defendant does not oppose Plaintiff's Service Award. (*Id.*) Plaintiff's Service Award in an amount of $5,000.00 is reasonable, in line with, and similar to other service awards approved by this District in multi-plaintiff FLSA collective cases that have resolved for monetary amounts similar to the total monetary settlement in this case. *See, e.g., Cooper v. OS Restaurant Services, LLC, et. al.*, Case No. 20-cv-240, ECF No. 57 (E.D. Wis. June 9, 2021) (Adelman, L.); *Aguilar v. Bel Brands USA, Inc.,* Case No. 20-cv-759, ECF No. 35 (E.D. Wis. April 29, 2021) (Griesbach, J); *Lee Stirmel v. S&C Electric Company*, Case No. 20-cv-347, ECF No. 44 (E.D. Wis. March 5, 2021) (Adelman, L.); *Hoaglan v. Heritage Senior Living, LLC*, 19-cv-1361, ECF No. 30 (March 19, 2021) (Adelman, L.); *Henderson, et. al. v. Russ Darrow Group, Inc.,* 19-cv-1421, ECF No. 51 (E.D. Wis. March 16, 2021) (Stadtmueller, J.); *Merschdorf v. D.C. Industries, Inc., et. al.*, Case No. 19-cv-1037, ECF No. 45 (Peterson, J.) (W.D. Wis. March 4, 2021); *Henderson v. Automated Pet Care Products, Inc.*, Case No. 19-cv-1640, ECF No. 41 (E.D. Wis. February 9, 2021) (Adelman, L.); *Medina v. Automax Financial, LLC*, Case No. 19-cv-1582, ECF No. 41 (E.D. Wis. January

29, 2021) (Stadtmueller, J.); *Schmitt v. Color Craft Graphic Arts, LLC*, 19-cv-1705, ECF No. 40 (E.D. Wis., November 13, 2020) (Griesbach, J.); *Bills v. TLC Homes, Inc.*, Case No. 19-cv-148, ECF No. 53 (E.D. Wis. October 8, 2020) (Pepper, J.); *Nande Yegger v. TRN Milwaukee*, Case No. 20-cv-144, ECF No. 21 (E.D. Wis. June 23, 2020) (Adelman, L.); *Clark v. Brunswick Corp.*, No. 19-cv-141, ECF No. 44 (E.D. Wis., May 22, 2020); *Cory Winter v. U.S. Paper Mills Corp., et. al.*, Case No. 19-cv-657, ECF No. 41 (E.D. Wis. May 7, 2020) (Griesbach, J.); *Lee v. UL LLC,* Case No. 17-cv-1617, ECF No. 19 (E.D. Wis. November 25, 2019) (Griesbach, J.); *Johnson v. National Technologies, Inc.*, No. 18-cv-462, ECF No. 57 (E.D. Wis., July 22, 2019) (Jones, J.); *Paswaters v. Krones, Inc.,* 19-cv-993, ECF No. 61 (E.D. Wis. July 12, 2019) (Stadtmueller, J.); *Eckstein v. St. Paul Elder Services, Inc*., 19-cv-945, ECF No. 38 (E.D. Wis., June 28, 2019) (Griesbach, J.); *Nicole Dietzen v. Community Loans of America, Inc.*, Case No. 2018-cv-818, ECF No. 39 (E.D. Wis. May 15, 2019) (Griesbach, J.); *John Weninger v. General Mills Operations, LLC*, Case No. 2018-cv-321, ECF No. 93 (E.D. Wis. April 18, 2019) (Stadtmueller, J.); *Tracy Gerlach v. West Revenue Generation Services, et. al.*, Case No. 2018-cv-170, ECF No. 91 (E.D. Wis. January 3, 2019) (Griesbach, J.); *Slaaen, et al. v. Senior Lifestyle Corporation, et al*., 18-cv-1562, ECF No. 92 (E.D. Wis. October 3, 2018) (Stadtmueller, J.).

## VII.  PLAINTIFF'S COUNSEL'S ATTORNEYS' FEES AND COSTS

Attorneys' fees and costs are recoverable under the FLSA, 29 U.S.C. § 216(b), and under the WWPCL, Wis. Stat. §109.03(6). The Seventh Circuit utilizes "common fund principles [to] properly control a case which is initiated under a statute with a fee-shifting provision, but is settled with the creation of a common fund." *Florin v. Nationsbank of Georgia, N.A.*, 34 F.3d 560, 564 (7th Cir. 1994). Indeed, "when a case results in the creation of a common fund for the

benefit of the plaintiff class, the common fund doctrine allows plaintiffs' attorneys to petition the court to recover its fees out of the fund." *Id.* at 563.

The Seventh Circuit utilizes a "market-based approach" to setting the percentage of a settlement fund to be awarded as reasonable attorneys' fees. *See, e.g., Silverman v. Motoroloa Sols, Inc.*, 739 F.3d 956, 957 (7th Cir. 2013) (finding that "attorneys' fees in class actions should approximate the market rate that prevails between willing buyers and willing sellers of legal services."). In applying this standard, a court is not required to "monitor how many hours the lawyers prudently devoted to the case. The client cares about the outcome alone." *In re Synthroid Mktg. Litig.*, 325 F.3d 974, 979-80 (7th Cir. 2003). Ultimately: "When the 'prevailing' method of compensating lawyers for 'similar services' is the contingent fee, then the contingent fee is the 'market rate.'" *Kirchoff v. Flynn*, 786 F.2d 320, 324 (7th Cir. 1986).

In keeping with this approach, federal courts, including the federal Districts in this State, have repeatedly approved attorneys' fees in the amount of one-third (33.33%) of the common settlement fund in collective cases under the FLSA and class cases under the WWPCL, in addition to reimbursement of reasonable costs expended in the litigation, because such amounts are fair and reasonable, consistent with the market rate (in Wisconsin) for representation of plaintiffs in collective and class litigation under the FLSA and the WWPCL, respectively, and consistent with Plaintiff's counsel's agreement with Plaintiff. (Luzi Decl., ¶¶ 7, 14.) *See, e.g., Cooper v. OS Restaurant Services, LLC, et. al.*, Case No. 20-cv-240, ECF No. 57 (E.D. Wis. June 9, 2021) (Adelman, L.) (approving 1/3 contingency fee in multi-plaintiff FLSA and WWPCL settlement); *Aguilar v. Bel Brands USA, Inc.,* Case No. 20-cv-759, ECF No. 35 (E.D. Wis. April 29, 2021) (Griesbach, J) (approving 1/3 contingency fee in multi-plaintiff FLSA and WWPCL settlement); *Stirmel v. S&C Electric Company,* 20-cv-347, ECF No. 44 (E.D. Wis.

March 5, 2021) (Adelman, L.) (approving 1/3 contingency fee in multi-plaintiff FLSA and WWPCL settlement); *Kathy Benoskie v. Kerry Foods, Inc.*, Case No. 19-cv-684, ECF No. 22 (E.D. Wis. September 28, 2020) (Pepper, P) (approving 1/3 contingency fee in multi-plaintiff FLSA settlement); *Nande Yegger v. TRN Milwaukee*, Case No. 20-cv-144, ECF No. 21 (E.D. Wis. June 23, 2020) (Adelman, L) (approving 1/3 contingency fee in multi-plaintiff FLSA settlement); *Cory Winter v. U.S. Paper Mills Corp., et. al.*, Case No. 19-cv-657, ECF No. 41 (E.D. Wis. May 7, 2020) (Griesbach, J) (approving 1/3 contingency fee in multi-plaintiff FLSA and WWPCL settlement); *Thomas Melzer v. Pro Label, Inc.*, Case No. 18-cv-1080, ECF No. 37 (E.D. Wis. January 23, 2020) (Griesbach, J.) (approving 1/3 contingency fee in multi-plaintiff FLSA and WWPCL settlement); *David Lee v. UL LLC,* Case No. 17-cv-1617, ECF No. 19 (E.D. Wis. November 25, 2019) (approving 1/3 contingency fee in multi-plaintiff FLSA settlement); *Ehmann v. Pierce Mfg., Inc.,* 16-cv-247-WCG, ECF Nos. 143, 151 (approving 1/3 contingency fee in multi-plaintiff FLSA and WWPCL settlement); *Frank v. Gold Cross Ambulance Serv., Inc.*, 13-cv-1149-WCG, ECF Nos. 24, 31 (approving 1/3 contingency fee in multi-plaintiff FLSA and WWPCL settlement).

In this case and prior to the Fairness Hearing, Plaintiff's counsel will Motion this Court for approval of attorneys' fees and costs in the total amount of $40,092.00, which consists of attorneys' fees of $38,333.33, or 1/3 of the Gross Settlement Amount, and reasonable actual case-related costs and administration expenses not to exceed $1,758.67. (ECF No. 17-1, ¶ 3.2; Luzi Decl., ¶ 15.) Defendant does not oppose this request. (ECF No. 17-1, ¶ 3.2.)

## <u>CONCLUSION</u>

For all of the reasons herein, the parties respectfully request that this Court:

1. Approve the parties' Settlement Agreement, (ECF No. 17-1), as a fair, reasonable, and adequate resolution of a bona fide dispute under the FLSA and the WWPCL;

2. Certify the WWPCL Class as a class action under FED.R.CIV.P. 23 for the purpose of settlement only;

3. Certify the FLSA Collective as a collective action under 29 U.S.C. § 216(b) for the purpose of settlement only;

4. Appoint Named Plaintiff, Marc Trautman, as the Class Representative and Collective Representative;

5. Appoint Walcheske & Luzi, LLC as Class Counsel pursuant to FED.R.CIV.P. 23(g) and Collective Counsel pursuant to 29 U.S.C. § 216(b);

6. Approve the Notice Packet in the form of **Exhibit A** to the parties' Settlement Agreement for distribution to all putative Collective and Class members;

7. Order that the Notice Packet to be sent to all Putative Collective Members and Putative Class Members constitutes the best notice practicable under the circumstances, and constitutes valid, due, and sufficient notice to Putative Collective Members and Putative Class Members in full compliance with the requirements of applicable law, including the Due Process clause of the United States Constitution;

8. Order that each Putative Collective Member who wishes to be included in the FLSA Collective must opt-in per the instructions set forth in the Notice Packet and that their response must be postmarked within forty-five (45) days of mailing of the Notice Packet;

9. Order that any Putative Collective Member who has properly and timely opted-in to the FLSA Collective and filed a Consent to Join form with this Court shall be bound by this Agreement when the Court issues a Final Order;

10. Order that each Putative Class Member who wishes to be excluded from the WWPCL Class must opt-out per the instructions set forth in the Notice Packet and that their response must be postmarked within forty-five (45) days of mailing of the Notice Packet;

11. Order that any Putative Class Member who has not properly and timely requested exclusion from the WWPCL Class shall be bound by this Agreement when the Court issues a Final Order;

12. Schedule a Fairness Hearing in approximately 90 to 120 days;

13. Order that any Motions, including but not limited to a Motion for Approval of Attorneys' Fees and Costs, a Motion for Approval of Named Plaintiff's Service Award, and a Joint Motion for Final Settlement Approval, must be filed with the Court no later than seven (7) days prior to the Fairness Hearing; and

14. Order that any Putative Collective Member or Putative Class Member who wishes to object in any way to this Agreement must file and serve such written objections per the instructions set forth in the Notice Packet, which must be postmarked no later than forty-five (45) days after the mailing of the Notice Packet, together with copies of all papers in support of his or her position. The Notice Packet shall state that the Court will not consider objections of any Putative Collective Member or Putative Class Member who has not properly served copies of his or her objections on a timely basis.

(ECF No. 17-1, ¶ 2.2(A).)

Dated this 14th day of July, 2021

*s/ Scott S. Luzi*

Scott S. Luzi, SBN 1067405
WALCHESKE & LUZI, LLC
235 N. Executive Drive, Suite 240
Brookfield, Wisconsin 53005
Telephone: (262) 780-1953
Email: sluzi@walcheskeluzi.com

*Attorneys for Plaintiff*

25593885.3

*s/ Erin M. Cook*

Erin (Maggie) M. Cook, SBN
GODFREY & KAHN, S.C.
833 East Michigan Street, Suite 1800
Milwaukee, Wisconsin 53202
Telephone: (414) 287-9569
Email: MCook@gklaw.com

*Attorneys for Defendant*